IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT A. CASERO, JR., ET AL.,    *
                                                *
       Plaintiffs,                    *
                                                *
v.                                                 *     Civil Case No. SAG-17-2205
                                                *
JOHN S. MCNULTY, ET AL.,         *
                                                *
       Defendants.                *
                                                *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs Robert A. Casero, Jr., and Catherine Mary Hattenburg ("the Caseros") filed a two-count Complaint against Defendants John S. McNulty and Carolyn McNulty ("the McNultys") seeking a declaratory judgment to resolve a boundary dispute between the parties, and compensatory, special, and punitive damages for slander of title. ECF 2. On August 11, 2017, Defendants filed a Motion to Dismiss the Complaint, ECF 5, along with a Memorandum of Law, ECF 5-2 (collectively, "the Motion"). Plaintiffs opposed, ECF 6 ("the Opposition"), and Defendants replied, ECF 7 ("the Reply"). On July 19, 2018, the Court stayed this case and denied the Motion without prejudice. ECF 9. On October 15, 2019, upon the parties' request, the Court lifted the stay and reinstated the Motion. ECF 26. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Defendants' Motion is granted.

I.      **FACTUAL BACKGROUND**

In ruling on the Motion, the Court accepts as true all factual allegations in the Complaint and draws all reasonable inferences in Plaintiffs' favor. *E.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). The Caseros and the McNultys are neighbors on Salt Lake Road along the Mason Dixon Line at the border of Harford

1

County, Maryland and York County, Pennsylvania. ECF 2, ¶¶ 2, 5. The McNultys' property lies within York County, Pennsylvania. *Id.* ¶ 5. The southern border of the McNultys' property is the Mason Dixon Line, which is also the southern border of York County, Pennsylvania. *Id.* ¶¶ 5, 25-26. The Caseros' property lies within Harford County, Maryland. *Id.* ¶¶ 2, 26. Though "the northern border on the Caseros' deed does not call to the Mason Dixon Line, the previous deeds of prior owners of the Caseros' parcel of land called to the Mason Dixon Line." *Id.* ¶ 22. Thus, the northern border of the Caseros' property is the Mason Dixon Line, which is also the northern border of Harford County, Maryland. *Id.* ¶ 22.

At the center of the dispute is the Mason Dixon Line's location in relation to Salt Lake Road. Salt Lake Road runs east to west, parallel to the northern border of the Caseros' property and to the southern border of the McNultys' property. ECF 2-5. The Caseros allege that the Mason Dixon Line (and therefore the northern border of their property) runs in and through the center of Salt Lake Road. ECF 2, ¶¶ 20-22. According to the Complaint, the McNultys believe that the Mason Dixon Line (and thus the southern border of their property) "extends south of Salt Lake Road." *Id.* ¶ 21. Based on this boundary dispute, the Caseros seek a declaratory judgment under section 14-111 of the Maryland Real Property Code. *Id.* ¶¶ 2-25 (Count One).

The Caseros also seek compensatory, special, and punitive damages for slander of title. *Id.* ¶¶ 26-34. The Caseros allege that before the McNultys filed suit against the Caseros in 2016 ("the Underlying Suit" or "Case No. 16-2426"), the McNultys employed three different surveyors to determine their property boundary, all of which concluded that the Mason Dixon Line runs in and through Salt Lake Road. *Id.* ¶¶ 29-30. Despite this, "the McNultys filed suit in an effort to exercise dominion over land south of Salt Lake Road," and this suit "has created a cloud on the Caseros' title." *Id.* ¶ 30.

The Underlying Suit that the Caseros reference is *McNulty v. Casero*, No. SAG-16-2426 (D. Md. filed June 28, 2016). In that case, initially before Judge J. Frederick Motz, the McNultys filed suit against the Caseros for compensatory, punitive, and special damages, as well as a declaratory judgment seeking to resolve the boundary dispute. Amended Complaint, *McNulty*, No. SAG-16-2426 (D. Md. Nov. 2, 2016), ECF 10. The McNultys alleged that the southern boundary of their property, which was "coterminous with" the Mason Dixon Line, lies approximately ten feet south of Salt Lake Road. *Id.* ¶¶ 13-15, 23. The McNultys alleged that on two separate occasions, the Caseros entered onto that strip of land (ten feet south of Salt Lake Road) and destroyed a fence on that land. *Id.* ¶¶ 18-21. The McNultys further alleged that the Caseros built a driveway "that crosses the McNulty Property without [the McNultys'] permission." *Id.* ¶ 22. Finally, the McNultys alleged that the Caseros executed a "Confirmatory Deed," which stated in part that the northern boundary of their property was "the southerly side of . . . the Mason Dixon Line," measured as running in and through Salt Lake Road. *Id.* ¶ 32. The McNultys, bringing thirteen total claims for relief, sought a declaratory judgment to resolve the boundary dispute, an action to quiet title, and an order ejecting the Caseros from the disputed property and requiring them to remove their driveway. *Id.* ¶¶ 41-70. The McNultys also sought compensatory, special, and punitive damages in tort, including one allegation of slander of title. *Id.* ¶¶ 71-127.

The McNultys initially filed their Complaint against the Caseros in the Underlying Suit on June 28, 2016. Complaint, *McNulty*, No. SAG-16-2426 (D. Md. June 28, 2016), ECF 1. On September 3, 2016, the parties submitted a Joint Status Report requesting a scheduling conference and, in relevant part, requested "that the Court allow for an early motion for summary judgment, prior to discovery," but indicated the McNultys' desire to file an Amended Complaint. Joint Status Report, *McNulty*, No. SAG-16-2426 (D. Md. Sept. 30, 2016), ECF 7, ¶¶ 4-5. The Court thereafter

3

held a scheduling conference and issued a Scheduling Order setting both a November 2, 2016 deadline for the McNultys to amend their Complaint, and a November 16, 2016 deadline for the Caseros to file either a "motion to dismiss or an answer and motion for summary judgment." Scheduling Order, *McNulty*, No. SAG-16-2426 (D. Md. Oct. 26, 2016), ECF 7, ¶¶ 4-5.

On January 5, 2017, Judge Motz issued a Memorandum Opinion in the Underlying Case ("the Opinion") granting the McNultys' Cross-Motion for Partial Summary Judgment, and denying the Caseros' Motion for Partial Summary Judgment, "on the issue of liability." Memorandum, *McNulty*, No. SAG-16-2426 (D. Md. Jan. 5, 2017), ECF 22-1 at 1. The Caseros filed their Complaint in the instant case against the McNultys in the Circuit Court for Harford County, Maryland, five months later, on June 28, 2017. ECF 2. The McNultys removed the case to this Court on August 4, 2017. ECF 1. The Caseros then moved for leave to file a counterclaim in the Underlying Case on August 16, 2017. Motion for Leave to File a Counterclaim, *McNulty*, No. SAG-16-2426 (D. Md. Aug. 16, 2017), ECF 45. Judge Motz denied this motion. Order, *McNulty*, No. SAG-16-2426 (D. Md. Sept. 25, 2017), ECF 54.

## II. LEGAL STANDARDS

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the

claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However,

5

a court is not required to accept legal conclusions drawn from the facts. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint,'" *Goodman*, 494 F.3d at 464 (emphasis omitted) (quoting *Forst*, 4 F.3d at 250).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Penn.*

*Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (*quoting Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004).

Accordingly, when resolving a Rule 12(b)(6) motion, a court may consider certain exhibits, without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ." *Goines*, 822 F.3d at 166 (citations omitted); *see also Oberg*, 745 F.3d at 136; *Anand*, 754 F.3d at 198; *Am. Chiropractic Ass'n*, 367 F.3d at 234; *Phillips* v. *LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing N. *Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also*

*Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery County.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

## III. ANALYSIS

The McNultys argue that abstention principles, ECF 5-2 at 5-8, collateral estoppel, *id.* at 8-9, and the compulsory counterclaim rules, *id.* at 9-13 each counsel dismissal of the Caseros' Complaint. Because the Court agrees that the Caseros were required to bring the instant claims as counterclaims in Case No. 16-2426, the Court need not address the McNultys' first two arguments.

Federal Rule of Civil Procedure 13 provides that a party "*must state*" in its pleading "any claim that – at the time of its service – the pleader has against an opposing party," if said claim "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," and "(B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1) (emphasis added). As the Supreme Court has long held, a party's failure to raise a compulsory counterclaim means that the party is barred from making any attempt to raise that claim in subsequent litigation. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974); *see also Mesker Bros. Iron Co. v. Donata Corp.*, 401 F.2d 275, 279 (4th Cir. 1968) ("[T]he effect of a defendant's failure to assert a counterclaim made compulsory by [Rule 13(a)] is to preclude its assertion in a later action against the former plaintiff."); *Aaron Fine Arts v. O'Brien*, 244 F.R.D. 294, 296 (D. Md. 2007) (quoting *Baker*, 417 U.S. at 469 n.1).

The purpose of this rule, the Fourth Circuit has noted, "is to prevent the relitigating of the same set of facts" in subsequent litigation. *Painter v. Harvey*, 863 F.2d 329, 332 (4th Cir. 1988). Thus, this Court has held that Rule 13(a) bars "simultaneous litigation of the same set of facts," even if the former litigation has not reached a final judgment on the merits. *Aaron Fine Arts*, 244 F.R.D. at 296-97 (citing *Painter*, 863 F.2d at 332). Indeed, "[i]f the limits of the compulsory counterclaim are no broader than res judicata, then [Rule] 13(a) would be superfluous." *Painter*, 863 F.2d at 333.

### A. The Caseros Were Required to Bring Their Instant Claims as Counterclaims in Case No. SAG-16-2426.

The Caseros' instant claims are paradigmatic examples of compulsory counterclaims. This Circuit has adopted a four factor test to determine whether a party's claim is a compulsory, or permissive, counterclaim: (1) whether the issues of law and fact in the two cases are "largely the same"; (2) whether res judicata would bar a subsequent suit on the party's counterclaim absent Rule 13(a); (3) whether "substantially the same evidence" would support or refute both claims; and (4) whether there is "any logical relationship" between the two claims. *Painter*, 863 F.2d at 331 (citing *Sue & Sam Mfg. Co. v. B-L-S Const. Co.*, 538 F.2d 1048, 1051-53 (4th Cir. 1976)). While the test consists of four factors, "[a] court need not answer all these questions in the affirmative" to find that the claim is a compulsory counterclaim, for the factors "are less a litmus, more a guideline." *Id.* (citations omitted). The third factor, while not itself dispositive, is the most probative, for if "the same evidence will support or refute both the claim and the counterclaim, the counterclaim will almost always be compulsory." *Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446, 452 (D. Md. 2014) (quoting *Painter*, 863 F.2d at 332).

Applying these factors, the Court reaches the inescapable conclusion that the Caseros' instant claims are compulsory counterclaims. First, the issues of law and fact in this case and in

Case No. 16-2426, if not "largely the same," are nearly identical. The Caseros seek a declaratory judgment that the disputed land south of Salt Lake Road belongs to them. ECF 2, ¶¶ 20-22, 25-26. Likewise, Count I of the McNultys' Amended Complaint in Case No. 16-2426 seeks, *inter alia*, a declaratory judgment that the McNultys "own fee simple title to the disputed portion of the McNulty Property south of Salt Lake Road." Amended Complaint, *McNulty*, No. SAG-16-2426 (D. Md. Nov. 2, 2016), ECF 10, ¶ 50. Both inherently require the Court to declare where the parties' property lines lie. Thus, the Caseros' argument that their instant suit "seeks a declaration of the [disputed] property lines," which is "not a specific form of relief claimed by the McNultys" in the Underlying Suit, is simply unfounded. ECF 6 at 7.

Further, the Caseros's suit seeks compensatory, punitive, and special damages based on a slander of title tort theory, because of the McNultys' claims to the lands south of Salt Lake Road. ECF 2, ¶¶ 27-34. The McNultys, in Case No. 16-2426, seek the exact same categories of damages under the same tort theory (slander of title) for the Caseros' actions in filing a Confirmatory Deed stating that their northern property boundary lies "on or within Salt Lake Road." Amended Complaint, *McNulty*, No. SAG-16-2426 (D. Md. Nov. 2, 2016), ECF 10, ¶¶ 121-27. Underlying both claims is the ultimate factual question of who owns the disputed lands south of Salt Lake Road. If the McNultys own the lands, then the Caseros' slander of title claim is precluded, and vice versa. This, together with the parties' identical tort theories, demonstrate that nearly identical issues of law and fact are present.

Second, res judicata would likely bar the Caseros' instant claims. Because both Complaints invoke this Court's diversity jurisdiction, Maryland's res judicata law governs. *See Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 218 (4th Cir. 2006). In Maryland, res judicata (also known as "claim preclusion") bars the re-litigation of a claim if: (1) the parties in both actions are identical

10

to, or in privity with, the parties in the earlier litigation; (2) the subsequent claim is "identical to that determined or that which could have been raised and determined in the prior litigation; and (3) the earlier litigation reached a final judgment on the merits. *Williams v. Long*, 558 F. Supp. 2d 601, 605 (D. Md. 2008) (quoting *R & D 2001 LLC v. Rice*, 402 Md. 648, 663 (2008).

Without commenting on the merits of the McNultys' arguments that the Caseros' instant claims are precluded under res judicata, the Caseros' claims would almost certainly be barred if Case No. 16-2426 had reached a final judgment on the merits when the Caseros initially filed the instant suit. The parties in both suits are identical, and as discussed above, the claims in the Caseros' suit are ones that certainly could be determined in Case No. 16-2426, given the near identical issues of law and fact.

Third, and most significantly, the claims in both suits rely on substantially the same evidence. To be sure, the Caseros would need to rely on some evidence to prevail on their slander of title claim that the McNultys will not rely on in prosecuting their claims against the Caseros, such as any evidence about the McNultys' assertion of title over the disputed lands in bad faith. But again, the evidence that supports or refutes the crux of the Caseros' instant claims for declaratory judgment and slander of title – namely, evidence showing who owns proper title to the disputed lands – lies also at the crux of the McNultys' claims in Case No. 16-2426. For example, the Caseros' Complaint contains, as exhibits, the following documents from Case No. 16-2426: the McNultys' original Complaint, ECF 2-3; the same JMT Survey that the McNultys attached to their Amended Complaint, ECF 2-5; the McNultys' Amended Complaint, ECF 2-6; and Judge Motz's ruling on the parties' cross-motions for partial summary judgment, ECF 2-9. Even further, three other exhibits that accompany the Caseros' Complaint, ECF 2-7 (the Caseros' Deed), ECF 2-10 (Shaw Surveying Survey), and ECF 2-11 (Shaw Surveying Survey Correction), were

11

submitted as exhibits in the Caseros' Motion for Reconsideration of Judge Motz's decision granting partial summary judgment in the McNultys' favor. *See* Motion for Reconsideration, *McNulty*, No. SAG-16-2426 (D. Md. Jan. 10, 2017), ECF 24-1 (the Caseros' Deed), ECF 24-3 (Shaw Surveying Survey), ECF 24-4 (Shaw Surveying Survey Correction). The Caseros therefore cannot credibly argue that their instant claims do not rely on the same evidence that would either support or refute the McNultys' claims in Case No. 16-2426.

The Caseros argue that their claims are not compulsory counterclaims because "this suit does not involve the destruction of a fence or damages for alleged trespass. Rather, the remedies requested and the causes of action are different from the claims brought by the McNultys." ECF 6 at 7. This argument is unavailing. The inquiry is not whether the claims in the second suit are identical to the claims in the first suit. Rather, the Court determines whether the claims raised in the second suit will require "nearly identical evidence and witnesses," and whether there will be "at least some overlapping evidence" in the Caseros' prosecution of the instant claims and in their defense of the McNultys' claims against them. *Long*, 28 F. Supp. 3d at 454-54. It is true that the McNultys, in the Underlying Suit, seek damages for trespass and for the Caseros' alleged actions in destroying a fence. What makes the Caseros' instant claims compulsory counterclaims, however, is that the evidence they plan to use to prosecute their claims against the McNultys in this suit – as shown above – is "nearly identical" to, or "at least . . . overlapping" with, the evidence they have *already* used in attempting to overturn Judge Motz's entry of partial summary judgment against them. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 86 F.R.D. 694, 696 (E.D.N.C. 1980) ("[I]f essential facts alleged by one party enter into and constitute a part of the cause of action set forth in the opposing party's counterclaim, that counterclaim is compulsory even though it may not be

precisely identical to the [original] cause of action and even though the counterclaim embraces additional allegations.").

Finally, the Caseros' claims are logically connected to the McNultys' claims in Case No. 16-2426. The Caseros' attempt to resolve a property line dispute is the logical corollary to the McNultys' previous attempt to resolve that same property line dispute. Likewise, the Caseros' claim that the McNultys' efforts to obtain title over the disputed property creates a cloud over the Caseros' title substantially mirrors the McNultys' same slander of title allegations against the Caseros. The fact that some of the evidence the Caseros use to support their claims for relief in their Complaint *is* the McNultys' claims against them is just one of the many factors leading to this conclusion. Most compelling, however, is that Caseros' Opposition informs the Court that if it "is inclined to grant the motion to dismiss, the Caseros will ask for leave to file a counterclaim in the underlying suit." ECF 6 at 8.

In sum, the Caseros' instant claims were available to them at the time the McNultys initially brought their suit. All four factors courts in this Circuit use to determine whether a counterclaim is permissive or compulsory lead to the conclusion that the Caseros' claims are compulsory. Without any argument that other parties outside of the Court's jurisdiction are necessary to adjudicate these claims, *see* Fed. R. Civ. P. 13(a)(1)(B), the Court finds that the claims the Caseros bring in this case are compulsory counterclaims that should have been brought in the Underlying Suit, Case No. 16-2426.

**B.     Dismissal Is the Proper Remedy.**

As previously indicated, a party's failure to raise a compulsory counterclaim means that the party is barred from making any attempt to raise that claim in subsequent litigation. *See Baker*, 417 U.S. at 469 n.1. Where appropriate, however, the Court may opt to grant leave to file a

counterclaim in the former litigation, if the claim in the subsequent litigation is deemed a compulsory counterclaim. *See Aaron Fine Arts*, 244 F.R.D. at 297 (citing 6 CHARLES ALAN WRIGHT, ARTHUR MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1410 (2007)).

Even setting aside the fact that Judge Motz already denied leave to file a counterclaim in the Underlying Suit, granting leave to file a counterclaim is not appropriate in this case. *See* Order, *McNulty*, No. SAG-16-2426 (D. Md. Sept. 25, 2017), ECF 54. Over two and a half years ago, Judge Motz granted the McNultys' Motion for Partial Summary Judgment, and denied the Caseros' same motion. Memorandum, *McNulty*, No. SAG-16-2426 (D. Md. Jan. 5, 2017), ECF 22.[1] This ruling came as early as it did because the Caseros, jointly with the McNultys, approached Judge Motz and "request[ed] that the Court allow for an early motion for summary judgment, prior to discovery." Joint Status Report, *McNulty*, No. SAG-16-2426 (D. Md. Sept. 30, 2016), ECF 7, ¶ 5. The parties also discussed the McNultys' ability to file an Amended Complaint before filing those dispositive motions, *id.* ¶ 6, and that request was incorporated into the Scheduling Order, *see* Scheduling Order, *McNulty*, No. SAG-16-2426 (D. Md. Oct. 26, 2016), ECF 9. The Caseros could have, at that time, brought the claims they now seek to prosecute against the McNultys, but instead they decided to litigate pre-discovery motions for partial summary judgment. The consequences of that decision include the waiver of any claims the Caseros may have had against the McNultys,

---

[1] Throughout their Opposition, and indeed throughout this litigation, the Caseros maintain that Judge Motz's ruling was a "non-final order regarding liability" that "never established where the Caseros' property line is," and is therefore "subject to revision." ECF 6 at 3; *id.* at 7 ("This Court's preliminary decision is not a declaratory judgment establishing where the [property] boundaries are."). It is immaterial, for the purposes of this Motion, to discuss the full extent of Judge Motz's January 5, 2017 ruling on liability.

that arose out of the same set of facts and circumstances giving rise to the McNultys' claims against them.  *See* Fed. R. Civ. P. 13(a)(1); *Baker*, 417 U.S. at 469 n.1.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 5, is GRANTED.  A separate Order is filed herewith.


Dated:  October 21, 2019              /s/
                                                Stephanie A. Gallagher
                                                United States District Judge